UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **DAPHNE DENIESE TERRY,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 5:15-CV-01056-MHH |
| } | |
| **NANCY A. BERRYHILL,** } | |
| **Commissioner of the** } | |
| **Social Security Administration,** } | |
| } | |
| **Defendant.** } | |

# **MEMORANDUM OPINION**

Pursuant to 42 U.S.C. § 405(g), plaintiff Daphne Deniese Terry seeks judicial review of a final adverse decision of the Commissioner of Social Security. The Commissioner denied Ms. Terry's claim for a period of disability and disability insurance benefits. After careful review, the Court remands the Commissioner's decision.[1]

## **I. PROCEDURAL HISTORY**

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. (*See* https://www.ssa.gov/agency/commissioner.html). Therefore, the Court asks the Clerk to please substitute Ms. Berryhill for Carolyn W. Colvin as the defendant in this action. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. Later opinions should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded.").

On June 26, 2012, Ms. Terry applied for a period of disability and disability insurance benefits. (Doc. 7-6, p. 2). Ms. Terry alleges that her disability began October 4, 2011. (Doc. 7-6, p. 2). The Commissioner initially denied Ms. Terry's claim on December 3, 2012. (Doc. 7-5, p. 3). Ms. Terry requested a hearing before an Administrative Law Judge (ALJ). (Doc. 7-5, p. 10). The ALJ issued an unfavorable decision on January 23, 2014. (Doc. 7-3, pp. 22-38). On April 27, 2015, the Appeals Council declined Ms. Terry's request for review (Doc. 7-3, p. 6), making the Commissioner's decision final and a proper candidate for this Court's judicial review. *See* 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's factual findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In evaluating the administrative record, the Court

may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted). If substantial evidence supports the ALJ's factual findings, then the Court "must affirm even if the evidence preponderates against the Commissioner's findings." *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III. SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has proven that she is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant

can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

In this case, the ALJ found that Ms. Terry has not engaged in substantial gainful activity since October 4, 2011, the alleged onset date. (Doc. 7-3, p. 27). The ALJ determined that Ms. Terry suffers from the following severe impairments: reconstructive surgery of a weight bearing joint; disorders of muscle, ligaments and fascia; fibromyalgia; degenerative disc disease; carpal tunnel syndrome; peripheral neuropathy; anxiety disorder; post-traumatic stress disorder; and affective disorders. (Doc. 7-3, p. 27). Based on a review of the medical evidence, the ALJ concluded that Ms. Terry does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 7-3, p. 27).

In light of Ms. Terry's impairments, the ALJ evaluated Ms. Terry's residual functional capacity or RFC. The ALJ determined that Ms. Terry has the RFC to perform:

> sedentary work as defined in 20 CFR 404.1567(a) except she can occasionally stoop, kneel, crouch, crawl, balance, and climb ramps and stairs. [Ms. Terry] cannot climb ladders, ropes, or scaffolds. She can frequently finger and handle with the bilateral upper extremities. [Ms. Terry] can have no concentrated exposure to extreme cold, dampness, and vibrations. She must avoid dangerous, moving, unguarded machinery and unprotected heights. Further, [Ms. Terry] can understand, remember, and carry out simple instructions. She is limited to jobs involving infrequent and well-explained workplace

changes.  She is limited to jobs involving casual interaction with the
general public.  She can concentrate and remain on task for two hours
at a time sufficient to complete an 8-hour workday.

(Doc. 7-3, pp. 28-29).

Based on this RFC, the ALJ concluded that Ms. Terry is not able to perform her past relevant work as a community health nurse, general duty nurse, and licensed practical nurse.  (Doc. 7-3, p. 33).  Relying on testimony from a vocational expert, the ALJ found that jobs exist in the national economy that Ms. Terry can perform, including document preparer, clerk, and table worker.  (Doc. 7-3, p. 34).  Accordingly, the ALJ determined that Ms. Terry has not been under a disability within the meaning of the Social Security Act.  (Doc. 7-3, pp. 33-34).

## IV. ANALYSIS

Ms. Terry argues that she is entitled to relief because the Appeals Council failed to remand her case in light of new and material evidence.  The Court agrees.[2]

After the ALJ issued a decision in this case in January of 2014, Ms. Terry petitioned the Appeals Council for review and submitted additional evidence to support her claim for benefits.  The new evidence includes treatment records from Dr. Warren Blackburn, Jr. dated September 24, 2008; August 3, 2010; August 17,

---

[2] Ms. Terry also argues that the ALJ failed to properly evaluate the opinion of Dr. Angelia Elliott and that the ALJ failed to acknowledge that Ms. Terry suffers from chronic fatigue syndrome. Because the Court remands this case in light of the new evidence that Ms. Terry submitted to the Appeals Council, the Court does not consider Ms. Terry's alternative arguments.  On remand, the Commissioner may examine Ms. Terry's other arguments in conjunction with an evaluation of the evidence as a whole.

5

2010; and October 19, 2010. (Doc. 7-10, pp. 33-38; *see also* Doc. 7-3, pp. 6, 10). The new evidence also includes a March 25, 2014 medical opinion from Ms. Terry's treating physician, Dr. Angelia Elliott. (Doc. 7-10, p. 39; *see also* Doc. 7-3, pp. 6, 10). The Appeals Council stated that it considered this evidence and that the "information does not provide a basis for changing the Administrative Law Judge's decision." (Doc. 7-3, pp. 6-7).

"With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007) (citing 20 C.F.R. § 404.900(b)). "The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Ingram*, 496 F.3d at 1261 (quoting 20 C.F.R. § 404.970(b)). "When a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether the new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

Ms. Terry alleges disability in part because of her fibromyalgia. (Doc. 7-3, pp. 45, 48; Doc. 7-7, p. 13). In her decision, the ALJ stated that she considered Ms. Terry's fibromyalgia under Social Security Ruling 12-02p "which provides

guidance on how to evaluate the condition" for purposes of social security disability. (Doc. 7-3, p. 31). SSR 12-02p provides, in relevant part:

> [W]e may find that a person has a[] [medically determinable impairment] of [fibromyalgia] if he or she has all three of the following:
>
> 1. A history of widespread pain . . . that has persisted (or that persisted) for at least three months. The pain may fluctuate in intensity and may not always be present.
>
> 2. At least 11 positive tender points on physical examination. . . .
>
> 3. Evidence that other disorders that could cause the symptoms or signs were excluded. . . .

SSR 12-02p, 2012 WL 3104869 at *2-3. With respect to the factors that SSR 12-2p identifies, the ALJ explained:

> The record documents [indicate that Ms. Terry complained] of a number of symptoms generally consistent with fibromyalgia including various body aches and pains and fatigue. However, [Ms. Terry's] tender [] points have not been documented within her treatment record, and her physical examinations do not support such a diagnosis. The record contains no evidence that [Ms. Terry] was thoroughly examined by her treating sources before the diagnosis was offered or that other disorders that could cause the symptoms or signs have been excluded.

(Doc. 7-3, p. 31). The new medical records from Dr. Blackburn document Ms. Terry's tender points, and they demonstrate that Dr. Blackburn diagnosed Ms. Terry with fibromyalgia after physical examinations.

7

On September 24, 2008, Dr. Blackburn examined Ms. Terry for "diffuse pain." (Doc. 7-10, p. 37). Dr. Blackburn reviewed Ms. Terry's history of abdominal pain, various surgeries, and broken bones. (Doc. 7-10, p. 37). Ms. Terry complained that she had "pain everywhere," and she "hurt[] to the touch." (Doc. 7-10, p. 37). Ms. Terry had "no energy" and she "sle[pt] poorly." (Doc. 7-10, p. 37). An examination of Ms. Terry's peripheral joints revealed that "she ha[d] all 18 trigger points." (Doc. 7-10, p. 38). Based on his examination, Dr. Blackburn diagnosed fibromyalgia, stating that "[s]he clearly has fibromyalgia." (Doc. 7-10, pp. 37-38).

Dr. Blackburn did not see Ms. Terry again until August 3, 2010. (Doc. 7-10, p. 35). Ms. Terry complained that she had had "episodes every six weeks where she ha[d] diffuse discomfort." (Doc. 7-10, p. 35). Ms. Terry reported that she had no energy and slept poorly. (Doc. 7-10, p. 35). Dr. Blackburn examined Ms. Terry's peripheral joints and found that she had "all 18 trigger points." (Doc. 7-10, p. 36). Dr. Blackburn stated that there were "no hard findings other than the diffuse trigger point tenderness." (Doc. 7-10, p. 36). Dr. Blackburn diagnosed fibromyalgia. (Doc. 7-10, pp. 35-36).

On August 17, 2010, Ms. Terry returned to Dr. Blackburn for a follow-up examination. (Doc. 7-10, p. 34). Ms. Terry still was not sleeping through the night, and her energy remained poor. (Doc. 7-10, p. 34). A peripheral joint

examination revealed that Ms. Terry had "all 18 trigger points." (Doc. 7-10, p. 34). Dr. Blackburn stated that Ms. Terry "clearly has fibromyalgia." (Doc. 7-10, p. 34). Dr. Blackburn discussed the diagnosis "extensively" with Ms. Terry and changed her medication regimen. (Doc. 7-10, p. 34).

During a follow up visit on October 19, 2010, Ms. Terry complained of right hip pain that had been bothering her for six to eight weeks. (Doc. 7-10, p. 33). Ms. Terry "also ha[d] some mild tenderness laterally as well as in the groin." (Doc. 7-10, p. 33). Dr. Blackburn again found that Ms. Terry had "all 18 trigger points." (Doc. 7-10, p. 33). In addition, external rotation of Ms. Terry's hip was "somewhat painful." (Doc. 7-10, p. 33). Dr. Blackburn diagnosed fibromyalgia, and he stated that Ms. Terry "may have some mild degenerative changes involving the hips." (Doc. 7-10, p. 33).

In addition to rebutting the ALJ's statements that doctors had not documented Ms. Terry's tender points in her treatment record and that physical examinations do not support a fibromyalgia diagnosis, Dr. Blackburn's treatment notes and other evidence in the record suggest that Ms. Terry's physicians excluded other disorders as part of their fibromyalgia diagnoses. Dr. Blackburn's August 17, 2010 treatment note states: "We did review [Ms. Terry's] bloodwork with her. Obviously if she does not have hemochromatosis[,] she has no end organ disease and her liver tests and blood sugar were normal." (Doc. 7-10, p. 33). The

record contains other evidence that Ms. Terry's treating physicians performed laboratory and diagnostic tests to exclude other disorders that could have been the cause of the signs and symptoms of Ms. Terry's fibromyalgia. (*See e.g.*, Doc. 7-9, pp. 74-88, 94-101, 104, 106, 114). Thus, the Court is not persuaded by the Commissioner's argument that Ms. Terry "has failed to show that other disorders that could have shown the same symptoms or signs [as her fibromyalgia] were excluded." (Doc. 13, p. 16). Accordingly, the Court remands for the ALJ to have an opportunity to consider Dr. Blackburn's records.

The Court also remands with instructions for the ALJ to consider Dr. Elliott's March 25, 2014 letter. In the letter, Dr. Elliott stated:

> Ms. Terry has been a patient here at Cullman Family Practice for many years. I have followed Ms. Terry throughout the last ten years and have watched her decline over the past four years. Ms. Terry at this time is not able to perform work for eight consecutive hours a day[,] and she is unable to perform work for forty hours a week. Her combination of chronic conditions includes fibromyalgia which was diagnosed by Dr. Warren Blackburn, a rheumatologist, in August 2010. She also suffers from osteoarthritis in multiple sites, chronic back pain, peripheral neuropathy, hemochromatosis, chronic fatigue syndrome, anxiety, depression, and post[-]traumatic stress disorder. Ms. Terry also has problems with concentration due to her multiple health problems and her medications that she is required to take. It is my medical opinion that Ms. Terry is totally and permanently disabled.
>
> . . .

(Doc. 7-10, p. 39). The Commissioner argues that Dr. Elliott's March 25, 2014 letter is not chronologically relevant and does not disturb the ALJ's findings

because "[o]pinions on some issues, such as whether the claimant is disabled or unable to work and the claimant's RFC, 'are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner.'" (Doc. 13, p. 14) (quoting 20 C.F.R. § 404.1527(d)). The Court is not persuaded.

Dr. Elliott's opinion is chronologically relevant. Dr. Elliott's statement that "Ms. Terry at this time is not able to perform work for eight consecutive hours a day[,] and she is unable to perform work for forty hours a week" is dated 61 days after the ALJ's decision. (Doc. 7-10, p. 39; *see also* Doc. 7-3, p. 22). Dr. Elliott based her opinion on her observation of Ms. Terry over the course of a decade of treatment, and she explained that Ms. Terry's condition had declined between 2010 and 2014. (Doc. 7-10, p. 39). The record contains at least 24 treatment notes from Ms. Terry's visits with Dr. Elliott between April 8, 2010 and May 6, 2013. During these visits, Ms. Terry complained of a variety of symptoms, including nausea, dizziness, abdominal pain, hip pain, wrist pain, breathing problems, back pain, lack of energy, aching bones, spine discomfort, trouble sleeping, night sweats, loss of appetite, blisters on her face, exhaustion, and fatigue. During these visits, Dr. Elliott consistently diagnosed fibromyalgia. (Doc. 7-9, pp. 4-11, 16-20, 23-43, 48-73, 128-130; Doc. 7-10, pp. 20-28). Therefore, Dr. Elliott's opinion "relate[s] back to the period before the ALJ's decision." *See Washington v. Soc. Sec. Admin., Comm'r.*, 806 F.3d 1317, 1322 (11th Cir. 2015); *Wilson v. Colvin*, 2016 WL

4447442, *7 (N.D. Ala. Aug. 24, 2016) ("It is too simplistic to say that [a physician's] evaluation related to a later time just because it occurred four months after the ALJ's decision, where it plainly illuminates a condition that long pre-dated that determination.").

In addition to being chronologically relevant, Dr. Elliott's March 25, 2014 opinion contains specific, substantive statements about Ms. Terry's limitations, statements that are consistent with Dr. Elliott's May 21, 2013 medical source opinion. In her March 2014 letter, Dr. Elliott listed Ms. Terry's physiological and psychological diagnoses and opined that Ms. Terry can neither work for 8 consecutive hours nor work for 40 hours in a week. In the May 21, 2013 medical source statement, Dr. Elliott opined that Ms. Terry can stand and walk for 10-15 minutes for a total of one hour in an eight-hour day and that Ms. Terry can sit for 20-30 minutes for two to three hours in an eight-hour day. (Doc. 7-10, p. 17). Dr. Elliott stated that Ms. Terry must lie down two or three times a day for 30-60 minutes at a time. (Doc. 7-10, p. 17).[3] Dr. Elliott cited clinical findings of

---

[3] Dr. Elliott also opined that Ms. Terry can never lift over 10 pounds; occasionally lift between five and 10 pounds; and frequently lift less than five pounds. (Doc. 7-10, p. 17). According to Dr. Elliott, Ms. Terry should never climb, balance, stoop, kneel, crouch, crawl, or push and pull with her legs, but Ms. Terry occasionally can reach, handle, finger, feel, and push and pull with her arms. (Doc. 7-10, p. 17). Dr. Elliott concluded that Ms. Terry should never work around extreme cold, heat, wetness/humidity, vibration, moving mechanical parts, and high exposed places. (Doc. 7-10, p. 18). Dr. Elliott opined that Ms. Terry occasionally can work around fumes, noxious odors, dusts, mists, gases, or poor ventilation, but she cannot drive automotive equipment. (Doc. 7-10, p. 18).

increased pain, fibromyalgia, osteoarthritis, and back pain as the basis for the identified limitations. (Doc. 7-10, pp. 17-18).

The ALJ discounted Dr. Elliott's May 21, 2013 medical source statement in part because the ALJ found that "while Dr. Elliott repeatedly noted [Ms. Terry's] report of an inability to work, she did not explicitly concur with the statement or assess [Ms. Terry] with functional limitations during the course of [ ] treatment." (Doc. 7-3, p. 30). The ALJ also found that no credible source advised Ms. Terry "to refrain from performing all gainful work activity." (Doc. 7-3, p. 32). Dr. Elliott's March 2014 letter addresses these asserted deficiencies. With regard to Dr. Elliot's final statement in the March 2014 letter that she holds the "medical opinion that Ms. Terry is totally and permanently disabled," the Commissioner need not give "controlling weight or special significance" to that opinion, but the Commissioner may not completely disregard the opinion or any of the specific medical opinions that Dr. Elliott provided. SSR 96-5p, 1996 WL 374183, at *5.

Dr. Elliott's March 25, 2014 letter also is consistent with other evidence in the record, including the findings of consultative examiner Dr. Victor DeLoach. Dr. DeLoach examined Ms. Terry on September 8, 2012. (Doc. 7-9, p. 139). Dr. DeLoach diagnosed chronic fatigue, fibromyalgia, and chronic pain. (Doc. 7-9, p. 142). Dr. DeLoach found "14 trigger points necessary for fibromyalgia." (Doc. 7-9, p. 142). He also noted that Ms. Terry has "a decreased range of motion in the

extension of her lumbar spine[,] and she has some decreased range or motion in her left knee as far as flexion." (Doc. 7-9, p. 142). The ALJ gave significant weight to Dr. DeLoach's diagnostic findings, but she gave less weight to Dr. DeLoach's opinion regarding Ms. Terry's fibromyalgia because the ALJ found that the opinion was "inconsistent with the remainder of the record." (Doc. 7-3, p. 32). Dr. DeLoach's findings regarding Ms. Terry's fibromyalgia are consistent not only with Dr. Blackburn's findings and diagnoses but also with Dr. Elliott's March 25, 2014 opinion that Ms. Terry suffers from chronic fibromyalgia.

> In an unpublished opinion, the Eleventh Circuit has observed that:
>
> "[Fibromyalgia's] cause or causes are unknown, there is no cure, and of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia." *Sarchet v. Chater,* 78 F.3d 305, 306 (7th Cir. 1996). Thus, a treating physician's determination that a patient is disabled due to fibromyalgia is even more valuable because there are no objective signs of severity and the physician must interpret the data for the reader.

*Stewart v. Apfel*, 245 F.3d 793 (Table), 2000 App. Lexis 33214, at *8-9, 2000 WL 33125958 (11th Cir. Dec. 20, 2000). Here, there is no medical evidence that contradicts Mr. Terry's fibromyalgia diagnoses from Dr. Blackburn and Dr. Elliott, and there is no medical opinion in the record that contradicts these treating physicians' opinions regarding Ms. Terry's physical limitations. Accordingly, the Appeals Council erred when it failed to remand Ms. Terry's case to the ALJ to consider new and material evidence.

## V. CONCLUSION

For the reasons discussed above, the Court remands the decision of the Commissioner for further administrative proceedings.

**DONE** and **ORDERED** this September 8, 2017.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE